UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEPHEN L. DRAKE,

Plaintiff,

v.

NEESURG SUNIL MEHTA,

Defendant.

No. 2:24-cv-00153-CSK PC

ORDER AND

FINDINGS & RECOMMENDATIONS

I. INTRODUCTION

Plaintiff is a state prisoner proceeding pro se in this 42 U.S.C. § 1983 case alleging medical indifference under the Eighth Amendment. Defendant's and plaintiff's cross-motions for summary judgment are briefed and before the court. (ECF Nos. 35, 38.) As discussed below, the Court recommends that defendant's motion be granted and plaintiff's motion be denied.

II. PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint on January 12, 2024. (ECF No. 1.) The case proceeds on the First Amended Complaint ("FAC") filed on February 23, 2024. (ECF No. 9.) The previously-assigned magistrate judge found that, for screening purposes, the FAC stated a claim that defendant Dr. Neesurg Mehta "violated plaintiff's Eighth Amendment right to adequate medical care by failing to provide timely surgery for plaintiff's detached retina" and ordered service of the complaint on Dr. Mehta. (ECF No. 10.)

Defendant answered the complaint (ECF No. 22), and after discovery was complete, filed a motion for summary judgment arguing that the undisputed facts establish that he did not breach the standard of care or engage in any conduct amounting to deliberate indifference. (ECF No. 35.) Plaintiff filed an opposition (ECF No. 37), and defendant filed a reply (ECF No. 43).

Plaintiff also filed a cross-motion for summary judgment. (ECF No. 38.) Defendant filed an opposition (ECF No. 45), and plaintiff filed a reply (ECF No. 48).

III. COMPLAINT

In his verified amended complaint, plaintiff alleges that, at all relevant times, he was a prisoner at Mule Creek State Prison (MCSP), and defendant Mehta was an ophthalmologist employed by UC Davis Hospital, which had a contract with MCSP to perform medical care for inmates. (FAC, ¶¶ 1-2.)

On July 31, 2023, at UC Davis Hospital in Sacramento, plaintiff underwent "the last surgery on his left eye because of a retinal detachment that was diagnosed by Defendant Mehta on [March 4, 2022]." (Id., ¶ 4.) Since that surgery, plaintiff "is able to see a tear crossing the center of his eye . . . with distortion around the tear and limited peripheral vision." (Id.)

When his left eye retinal detachment was diagnosed on March 4, 2022, plaintiff "had been showing symptoms of retinal tearing/detachment for three weeks prior and Defendant Mehta was made aware of this." (Id.) Defendant Mehta allegedly told plaintiff that surgery would be performed in "a week or two" and that he didn't think plaintiff's condition would get worse during that time. (Id.) Surgery was performed thirteen days later, resulting in "a bubble of blood . . . clouding Plaintiff's vision." (Id.) Plaintiff was informed that he needed a second surgery for cataracts, which was performed on July 21, 2023. (Id.) Plaintiff's review of the records indicated that the 13-day delay of his surgery for a detached retina "resulted in additional tears" to his retina, such that "Defendant's inaction . . . caused permanent damage to Plaintiff's vision." (Id.)

Plaintiff asserts that defendant Mehta "acted with deliberate indifference because failure to treat [his] serious eye condition and the intentionally and unreasonably long delay in providing surgical care . . . have resulted in loss of vision." (Id., ¶ 7.) Plaintiff asserts that defendant's actions were "a far departure from the standard of care" and amounted to the "blatantly

malicious" infliction of harm. (Id., ¶ 9.) Plaintiff seeks compensatory and punitive damages. (Id. at 6.)

IV. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

Matsushita, 475 U.S. at 586 (citation omitted).

In the discovery and scheduling order filed on November 18, 2024, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 24 at 7-8) (citing Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).)

## V. UNDISPUTED FACTS

The Court has reviewed defendant's Statement of Undisputed Facts (ECF No. 35-2, "DSUF") filed in support of his motion for summary judgment. The Court has also reviewed plaintiff's Separate Statement of Undisputed Material Facts (ECF No. 37 at 7-11, "PSUF".) The Court has also reviewed plaintiff's list of disputed factual issues with citations to evidence. (ECF No. 37 at 1-6, "PDF".)

As to the underlying evidence, defendant's attorney has attached excerpts from plaintiff's UC Davis Hospital medical records. (ECF No. 35-3, "Appx."). Defendant has also submitted a declaration by Jay A. Fleischman, M.D., a clinical professor of ophthalmology, retained to "review the care and treatment rendered by [Defendant Mehta]" in the events of this case. (ECF No. 35-6, "Fleischman Decl.," ¶ 6.) Dr. Fleischman reviewed "all the pertinent medical records from UC Davis Hospital, including photographs of Plaintiff's condition therein, as well as Plaintiff's deposition transcript" and, based on his review, found certain facts to be true. (Fleischman Decl., ¶¶ 6-17.) Defendant incorporated certain factual findings by Dr. Fleischman into his Statement of Undisputed Facts.

For purposes of summary judgment, the Court finds the following facts undisputed. Where plaintiff failed to properly address defendant's assertion of fact as required, this Court considers the fact undisputed. See Fed. R. Civ. P. 56(e)(2).

1. Plaintiff, an inmate at MCSP, began to experience symptoms in his left eye that included blood in his vision. (DSUF 1.)
2. On the same day he began to experience those symptoms, Plaintiff reported it to the prison medical staff and requested to be seen. (DSUF 2.)
3. The day after he submitted the request, Plaintiff was seen by a nurse, who indicated

she would refer him to the ophthalmologist. (DSUF 3.)

4. Plaintiff made a total of three requests to the nurses at the prison before he was ultimately seen by an ophthalmologist. (DSUF 5.)

5. Each time Plaintiff made a request to a nurse at the prison, it was because of worsening symptoms in his eye. (DSUF 6.)

6. Plaintiff submitted his third request once the curtain over his vision reached the center of his eye. (DSUF 7.)

7. By the time Plaintiff reported to the hospital on March 4, 2022, it may have been as long as three weeks since the onset of Plaintiff's symptoms. (DSUF 11.)

8. By the time Plaintiff reported to the emergency department, he had only peripheral vision between the 12 o'clock and 4 o'clock position and was unable to see his fingers in front of his face with his left eye. (DSUF 12, 13.)

9. Plaintiff was referred to ophthalmology from the emergency department for a suspected detached retina. (DSUF 14.)

10. Defendant Mehta was the retina fellow[1] who saw Plaintiff on March 4, 2022, the same day Plaintiff reported to the emergency department.[2] (DSUF 15.)

11. At the time Dr. Mehta saw Plaintiff, he reported a curtain over his vision, which originally appeared at the bottom of his vision and reached the center of his vision approximately five days later, on or around February 15, 2022. (DSUF 16.)

12. Dr. Mehta diagnosed Plaintiff as having a retinal detachment involving fovea and superior macula, with only a small portion of the retina attached along the inferior

---

[1] To clarify the nature of a medical fellowship, the Court takes judicial notice of the following statement on the UC Davis Health website: "The UC Davis Eye Center's fellowship programs provide post-residency subspecialty training to prepare surgeons for a career in academic ophthalmology [or private practice]." See https://health.ucdavis.edu/eyecenter/educational_programs/fellowship/index.html (last visited July 16, 2026).

[2] Plaintiff disputes DSUF Nos. 15, 16, 17, and 18. However, they are supported by the record of plaintiff's March 4, 2022 consultation at UC Davis Hospital. See Appx., p. 022-024; see also Fleischman Decl., ¶¶ 7-12 (interpreting medical record of March 4, 2022 consultation).

macula. (DSUF 17.)

13. Plaintiff had retinal tears at the 11 o'clock and 2 o'clock positions. (DSUF 18.)

14. Dr. Mehta set out a plan for surgical repair in one to two weeks. (DSUF 19.)

15. The surgical repair was performed on March 17, 2022 by Glenn Yiu, M.D. (DSUF 20.)

16. Dr. Mehta was not involved in the surgical repair of Plaintiff's retinal tears. (DSUF 21.)

## VI. EIGHTH AMENDMENT MEDICAL INDIFFERENCE

### A. Legal Standards

The Constitution requires prison officials to provide inmates with reasonably adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). To hold an official liable for violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective prong and subjective prong. First, the inmate must suffer from a serious medical need (the objective prong); and second, the official must be deliberately indifferent to the inmate's serious medical need (the subjective prong). See Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta, 744 F.3d at 1082-83; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012). A medical need is "serious" if the failure to treat "could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).

The "second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (internal citations omitted). This standard requires that the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer, 511 U.S. at 837. This "subjective approach" focuses only "on what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)…" Farmer, 511 U.S. at 839. Deliberate indifference is a higher standard than medical negligence or malpractice, and a difference of opinion between medical professionals—or

between a physician and the prisoner—generally does not amount to deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by Peralta, 744 F.3d at 1076.

Neither will an "inadvertent failure to provide medical care" sustain a claim. See Estelle, 429 U.S. at 105. Misdiagnosis alone is not a basis for a claim, see Wilhelm, 680 F.3d at 1123, and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference," Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Instead, a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case." Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

B. Discussion

Here, while plaintiff had objectively serious medical needs consisting of a detached retina and retinal tears in his left eye (the objective prong), he has failed to adduce evidence that defendant Dr. Mehta was deliberately indifferent to those needs (the subjective prong).

The undisputed facts show that plaintiff did not meet or have any patient relationship with Dr. Mehta until approximately three weeks after he began experiencing vision problems in early February 2022. During those weeks, plaintiff made three requests to prison nurses for medical care for vision problems in his left eye, which was worsening over time. Dr. Mehta, an ophthalmology fellow in post-residency training, met and examined plaintiff the day plaintiff was admitted to the emergency room at UC Davis Hospital.

At his May 27, 2025 deposition, plaintiff testified that the basis for his deliberate indifference claim against defendant Dr. Mehta is that "he put my surgery off for two weeks, and in that two-week period, that's when the irreparable damage occurred." (Appx. at 42, lines 15-21.)

In a declaration in support of summary judgment for defendant, Dr. Jay Fleischman, a qualified expert on the standard of care for ophthalmologists[3], reviewed the records of plaintiff's

[3] The undersigned finds Dr. Fleischman's education, training, credentials, and experience qualifies him as an expert. See Fed. R. Civ. P. 702. "[E]xperts are allowed to testify to opinions

treatment and concluded that "Dr. Mehta's care and treatment of Plaintiff was thoroughly appropriate and fully within the standard of care." (Fleischman Decl., ¶ 16.) Dr. Fleischman noted that plaintiff's visual symptoms started three to four weeks before he ever reported to the hospital. (Id.) He continued:

> Once involved in Plaintiff's care, Dr. Mehta undertook a detailed evaluation of Plaintiff's condition to adequately assess the state of the retinal detachment and its progression. By the time Plaintiff reported to the hospital on March 4, 2022, the surgical repair of his retina was no longer an immediate emergency as it is well known, and within a reasonable medical certainty, that once the macula has detached for more than three days the chance to return to perfect vision is reduced. Therefore it was appropriate for Dr. Mehta to order a procedure within one to two weeks as performing the surgery emergently as of the time of [Plaintiff's] visit with Mehta would not have improved his prognosis.

(Id.) (emphasis added). Dr. Fleischman further opined that "there were no negligent acts, or omissions to act, on the part of Dr. Mehta that caused Plaintiff injury or harm." (Id., ¶ 18.) Dr. Fleischman also opined that plaintiff's post-surgical outcome of "20/60-70 vision is, given the circumstances [of a three-to-four-week delay], a successful outcome[.]" (Id.)

In opposition to defendant's motion for summary judgment, plaintiff disputes Dr. Fleischman's interpretation of the medical record. (PDF at 3-6.) Plaintiff asserts, for example, that had defendant Mehta "met the standard of care," plaintiff's post-surgical vision "would have been closer to 20/20 with no large Z-shaped tear distorting [it]." (Id. at 6.)

Except where the type of conduct required by the particular circumstances is within the common knowledge of laymen, the standard of care can only be proven by expert testimony. See Hutchinson v. U.S., 838 F.2d 390, 392 (9th Cir. 1988). Thus, "[w]hen a defendant moves for summary judgment and supports the motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." Id. A plaintiff's unsupported allegations that a defendant's actions fell short of the standard of care do not create a triable issue of fact on

---

without having firsthand knowledge, so long as it is permissible in their discipline." Trujillo v. Cty. of Los Angeles, 751 F. App'x 968, 970-71 (9th Cir. 2018) (citation omitted).

summary judgment. Id. at 393.

Here, plaintiff provided no expert testimony to rebut Dr. Fleischman's expert opinion. The timing of surgery to repair a detached and torn retina that has been detached for approximately three weeks is not something within a layperson's common knowledge. Thus, plaintiff was required to provide expert testimony to rebut Dr. Fleischman's opinion that Dr. Mehta's plan to schedule surgery within one to two weeks was within the standard of care. Plaintiff did not. Because there is no triable issue of fact on the second prong of the deliberate indifference test, defendant is entitled to summary judgment.

## VIII. CONCLUSION

IT IS HEREBY ORDERED that the Clerk of Court assign a district judge to this action.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 35) be GRANTED;
2. Plaintiff's motion for summary judgment (ECF No. 38) be DENIED;
3. Judgment be entered for defendant Mehta; and
4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 20, 2026

Chi Soo Kim

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

6/drak153.msj.f&rs